# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRIEBEL PRODUCTION CO.; KRIEBEL RESOURCES COMPANY; JGG PARTNERS, LP; K & K MINERAL RESOURCES CO.; KRIEBEL GAS & OIL, INC.; KRIEBEL PRODUCTION CO., LLC; KRIEBEL MINERALS; KRIEBEL RESOURCES CO., LLC; and KRIEBEL RESOURCES<br><br>Plaintiffs,<br><br>vs.<br><br>RANGE RESOURCES -APPALACHIA, LLC<br><br>Defendant. | Case No.: 2:26-cv-01258<br><br>**Electronically Filed**<br><br>Type of Document:<br><br>**Amended Complaint**<br><br>Filed on Behalf of Plaintiffs<br><br>Counsel of Record for this Party:<br><br>Al Lander, Esq.<br>Pa. Id. #25821<br><br>Zach Shekell, Esq.<br>Pa. Id. #308785<br><br>Law Offices of Greco, Lander & Shekell, P.C.<br>1390 East Main Street, Suite 2<br>P.O. Box 667<br>Clarion, PA 16214<br>Phone: (814) 226-6853<br>Fax: (814) 226-4951 |

# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRIEBEL PRODUCTION CO.; KRIEBEL RESOURCES COMPANY; JGG PARTNERS, LP; K & K MINERAL RESOURCES CO.; KRIEBEL GAS & OIL, INC.; KRIEBEL PRODUCTION CO., LLC; KRIEBEL MINERALS; KRIEBEL RESOURCES CO., LLC and KRIEBEL RESOURCES, Plaintiffs, | : | Case No.: 2:26-cv-01258 |
| vs. | : | **Electronically Filed** |
| RANGE RESOURCES – APPALACHIA, LLC, Defendant. | : | |

## AMENDED COMPLAINT

AND NOW, comes the Plaintiffs, Kriebel Production Co., Kriebel Resources Company, JGG Partners, LP, K & K Mineral Resources Co., Kriebel Gas & Oil, Inc., Kriebel Production Co., LLC, Kriebel Minerals, Kriebel Resources Co., LLC; and Kriebel Resources, by and through its undersigned legal counsel, the Law Offices of Greco, Lander & Shekell, P.C., and brings this Amended Complaint, and in support thereof alleges as follows:

1. Plaintiffs, Kriebel Production Co.; Kriebel Resources Company; JGG Partners, L.P.; K & K Mineral Resources Co.; Kriebel Gas & Oil, Inc.; Kriebel Production Co. LLC; Kriebel Minerals; Kriebel Resources Co., LLC; and Kriebel Resources, are Pennsylvania companies having their registered office at 633 Mayfield Drive, Clarion, PA 16214 (“Plaintiffs”).
2. Defendant, Range Resources – Appalachia, LLC is a limited liability company and/or business entity, with a principal place of business at 3000 Town Center Blvd., Canonsburg, PA 15317 (“Range”).

3. Jurisdiction and Venue in the United States District Court for the Western District of Pennsylvania is for the reasons set forth in Range's Notice of Removal.

**FACTS**

4. Plaintiffs are shallow oil and gas operator, owning and operating over 1,929 shallow oil and gas wells in western Pennsylvania.

**STERN ESTATE PROPERTY**

5. Prior to entering into the Range Contract, as defined herein, Kriebel was the fee owner of a one hundred percent (100%) interest in the oil and gas, in and under a property located in Kittanning Township, Armstrong County, being 49.652 acres and identified as Armstrong County Tax Map Numbers 25-144.01-01-17, 25-144.01-01-20, 25-144.01-01-20.001, 25-144.01-01-20.003, 25-144.01-01-20.004 (hereafter the "Stern Property").

6. On or around February of 1991, the Stern Property was owned by the Estate of Ernest Stern and the International Finance Company.

7. Plaintiffs leased the right to drill, operate and produce oil and gas from the Stern Property via the following oil and gas leases or agreements:

   a. Oil and Gas Agreement dated February 11, 1991 between the Earnest Stern Estate and Kriebel Production Co. and recorded in the Armstrong County Recorder of Deeds office at Deed Book 1081, Page 308 (the referenced Oil and Gas Agreement is attached hereto as "*Exhibit A*");

   b. Oil and Gas Agreement dated April 2, 1991 between Regina A. Stern, Executrix of the Earnest Stern Estate and Kriebel Production Co. and recorded in the Armstrong County Recorder of Deeds office at Deed

Book 1096, Page 134 (the referenced Oil and Gas Agreement is attached hereto as "*Exhibit B*");

c. Oil and Gas Agreement dated April 2, 1991 between Lynda A. Coslov, Executrix of the Earnest Stern Estate and Kriebel Production Co. and recorded in the Armstrong County Recorder of Deeds office at Deed Book 1096, Page 345 (the referenced Oil and Gas Agreement is attached hereto as "*Exhibit C*");

d. Oil and Gas Agreement dated April 2, 1991 between Judy S. Guttman, Executrix of the Earnest Stern Estate and Kriebel Production Co. and recorded in the Armstrong County Recorder of Deeds office at Deed Book 1096, Page 131 (the referenced Oil and Gas Agreement is attached hereto as "*Exhibit D*");

e. Oil and Gas Agreement dated April 2, 1991 between International Finance Company and Kriebel Production Co. and recorded in the Armstrong County Recorder of Deeds office at Deed Book 1087, Page 283 (the referenced Oil and Gas Agreement is attached hereto as "*Exhibit E*").

*The five Oil and Gas Agreements set forth in paragraph "7" shall hereafter be referred to as the "**Lease**".*

8. Kriebel acquired a one hundred percent ("100%) fee ownership interest in the Stern Property by deed dated October 30, 1996 between Regina A. Stern, Lynda A. Coslov, Judy S. Guttman and Richard M. Stern, Executors of the Estate of Ernest Stern, and the International Finance Company, as grantors and Kriebel Production Company, as grantee ("Stern Deed"). The Stern Deed is attached hereto as "*Exhibit F*".

## RANGE TRANSACTION

9. On or about June 11, 2008, Kriebel Minerals, Inc., Kriebel Production Co., Kriebel Resources, Kriebel Resources Company, JGG Partners, L.P., K & K Mineral Resources Co., Kriebel Gas & Oil, Inc., ("Kriebel Contracting Parties") and Range Resources – Appalachia, LLC entered into a Purchase and Sale Agreement, Participation Agreement and AMI (the "PSA"), with Range agreeing to purchase certain, and specifically described oil and gas rights owned by Kriebel. A copy of the PSA is attached hereto as "*Exhibit G*".

10. The Kriebel sale, as set forth herein, was originally presented to multiple companies in April of 2008.

11. The initial sale proposal by Kriebel provided the said companies an opportunity to bid on an **87.5% net revenue interest** in deep gas zones of the oil and gas leasehold properties operated and held by Kriebel.

12. On May 9, 2008 Range submitted its bid to purchase the Kriebel owned leaseholds (hereafter the "Range Bid"). The Range Bid is attached hereto as "*Exhibit R*".

13. Paragraph "d" of the Range Bid recognized and expressly assumed a "lease burden" of 12.5% for the landowner royalty on each of the properties being sold.

14. After a modified version of the Range Bid was accepted by Kriebel, the PSA, corresponding exhibits and the Range Contract were all drafted with the understanding that the properties being sold by Kriebel would be subject to a 12.5% landowner royalty.

15. In accordance with the terms of the PSA, on August 19, 2008, Kriebel and Range executed an assignment whereby Kriebel assigned to Range, the certain oil and gas rights specifically described and set forth in the PSA (hereafter "Range Assignment"); the same being recorded in each applicable county wherein leases were assigned. The Range Assignment is attached hereto as "*Exhibit H*".

16. Paragraph "7" of the recorded Range Assignment, specifically defined the "entire agreement of the parties" as the *Range Assignment*, the *PSA*, and "*the documents delivered pursuant to the Purchase Agreement*". Paragraph "7" of the Range Assignment is fully quoted as follows:

> *Modification. This* ***Assignment, the Purchase Agreement and the documents delivered pursuant to the Purchase Agreement contain the entire agreement of the parties hereto with respect to the subject matter hereof****, and may be amended only by a written instrument executed by the parties. There are no representations, promises, warranties, covenants, understandings or agreements among the parties with respect to the subject matter hereof, expressed or otherwise, except as expressly set forth herein, in the Purchase Agreement or in the documents delivered pursuant to the Purchase Agreement.*

17. The "*documents delivered pursuant to the Purchase Agreement*" are attached hereto as the corresponding exhibit:

a. PSA – "Exhibit G"

b. Range Assignment – "Exhibit H"

c. Closing Agreement – "Exhibit I"

d. Closing Settlement Statement (Including Spreadsheet) – "Exhibit J"

e. Assignment and Conveyance of Fee and Other Minerals – "Exhibit K"

f. Pennsylvania Subsistence Certificates – "Exhibit L"

g. Affidavits of Non-Foreign Status – “Exhibit M”

h. Delaware Good Standing Certificate – “Exhibit N”

i. Pennsylvania Articles of Incorporation and Merger – “Exhibit O”

j. Joint Notice – “Exhibit P”

k. Model Form Operating Agreement – “Exhibit Q”.

18. The PSA, Assignment and the documents set forth and attached as Exhibits “G” through “Q” are hereafter referred to cumulatively as the “*Range Contract*”.

**KRIEBEL RESOURCES CO, LLC’S ACQUISITION OF THE STERN PROPERTY AND STANDING AS PLAINTIFF**

19. By Assignment of Leases dated March 28th, 2011, and recorded in the Armstrong County Recorder of Deeds Office at Instrument Number 201105659, Kriebel Production Co. and Kriebel Resources Company assigned all of their right, title and interest to the Stern Property to plaintiff, Kriebel Resources Co, LLC (“Kriebel”). The KRC Assignment is attached hereto as Exhibit “T” (“KRC Assignment”).

20. The Stern Property is set forth on page 10 out of 64 of the KRC Assignment, being the seventh property from the bottom of the page.

21. Notably, the recording information for the Stern Property on the KRC Assignment is the Stern Deed, evidencing that in 2011, Kriebel understood that it continued to own a fee interest in the Stern Property.

**STERN PROPERTY PERCENTAGE INTEREST ASSIGNED TO RANGE**

22. The PSA and Range Assignment each included an attached exhibit, wherein the specific property and percentage ownership interest being assigned was set

forth in table form, with the said table including the following columns: Lease Name; *Lessee; Lease Index Number; Acres; Lease Status; Lease Effective Date; Lease Expiration; Township; County; Working Interest;* ***Net Revenue Interest;*** *Net Mineral Acres; Tax Map Number; and Recording Information Book and Page.*

23. The Stern Property was listed on Line 184 of Exhibit "A" to the PSA, and on page 7 of 29 on the Exhibit "A" to the Range Assignment.

24. The terms *Working Interest* and *Net Revenue Interest* are defined in the PSA as follows:

> *"**Working Interest**" – with respect to each Lease, that share of all costs and expenses associated with the exploration, development and operation of such Lease that the owner thereof is required to bear and pay by reason of such ownership, expressed as a decimal or percentage.*
>
> *"**Net Revenue Interest**" – with respect to each Lease, the decimal or percentage ownership of the lessee in production from such Lease,* ***after deducting such lessee's proportionate share of all applicable Lease Burdens****. By way of example only, (a) if such lessee owns 100% of the Working Interest in such Lease, the lessor's royalty under such Lease is 12.5% and such Lease is burdened by a 5% of 8/8th overriding royalty interest, then the Net Revenue Interest would be 82.5% (b) if such lessee owns 50% of the Working Interest in such Lease, the lessor's royalty is 12.5%, and the Lease is burdened by a 5% of 8/8th overriding royalty interest, then the Net Revenue Interest of such lessee would be 41.25%.*

25. "***Lease Burden***" is defined in the PSA as follows: "*with respect to each Lease, the royalties, overriding royalties, production payments, net profit interests, and all similar interests burdening such Lease or production therefrom*".

26. "***Lease***" is defined in the Closing Agreement, as the Closing Agreement amended paragraph "2.b." of the PSA as follows: *"(i) the instruments*

*identified in Exhibit A hereto and (ii) the oil, gas and other minerals in, to and under the lands described in Exhibit A-1 hereto or in the instruments identified in Exhibit A-1 hereto".*

27. The Net Revenue Interest was included in the exhibits to the PSA and Assignment **for the purpose of specifying and limiting the total interest being assigned**, and the Lease Burden or royalties owed to the oil and gas owner on any production from the corresponding properties.

28. The PSA and Range Assignment sold and assigned the following interest in the Stern Property: **a 100% - Working interest and an 87.5% - Net Revenue Interest**.

29. With Kriebel Contracting Companies only assigning an 87.5% Net Revenue Interest in the Stern Property, Plaintiffs retained ownership of a 12.5% interest.

30. The PSA and Range Contract unambiguously set forth and described that the Stern Property was, and would be upon assignment, subject to a 12.5% "*Lease Burden*", being the 12.5% landowner royalty owed to Kriebel.

**CALCULATION OF PSA PAYMENT**

31. On certain properties owned by Plaintiffs in fee, Kriebel Contracting Companies and Range negotiated for Range to purchase a 100% Net Revenue Interest.

32. The 594.50 acres specifically identified and negotiated to convey a 100% Net Revenue Interest to Range ("Fee Properties"), were set forth on a separate exhibit, identified as "Exhibit A.1" to the Closing Agreement. The Stern Property was not included in Exhibit A.1.

33. The Fee Properties were assigned to Range via a separate assignment, titled Assignment and Conveyance of Fee and Other Minerals.

34. Range and the Kriebel Contracting Companies negotiated and agreed that Range would pay to Plaintiffs, $135.48 per acre, for each percentage of ownership/royalty conveyed above the 87.5% Net Revenue Interest on the Fee Properties.

35. An August 14, 2008 email from Milissa Bauer, at the time the Vice-President of Administration of Kriebel, to representatives of Range, Jeff Bynum, Ruth Whitten and Robin Fredrickson, wherein the formula and total paid for the Fee Properties is set forth, is attached hereto as Exhibit "S".

36. The adjusted Net Revenue Interest and adjusted payment per property, reflecting the amount paid for each property, was agreed to by the parties, and recorded as part of the Closing Settlement Statement, and as part of the "*closing documents*".

37. The 594.50 acres of Fee Properties resulted in an additional $1,006,785.75 being paid to Plaintiffs. (The Stern Property was **not** included as one of the "Fee Properties".)

38. As shown on Line 184 to the spreadsheet attached to the Closing Settlement Statement, Kriebel was paid $140,257.95 for the Stern Property, **based upon an 87.5% Net Revenue Interest** being assigned to Range.

39. The Stern Property was **not** included on the Assignment and Conveyance of Fee and Other Minerals, the Net Revenue Interest was **not** adjusted on the Closing Settlement Statement and the price was **not** adjusted on the Closing Settlement Statement.

40. The payment of $140,257.95 for an 87.5% Net Revenue Interest indicates the parties' intent was to sell and assign only an 87.5% Net Revenue Interest to Range. The dollar payment for the Stern Property and the percentage that was paid for is specifically set forth on Line 184 of the spreadsheet attached to the Closing Settlement Statement.

**RANGE TO GLADE PARK GAS, L.P.**

41. Upon information and belief, by Assignment and Bill of Sale, dated June 28, 2019 and recorded in the Armstrong County Recorder of Deeds office at Instrument Number 201907188 ("Glade Assignment"), Range assigned to Glade Park Gas, L.P. ("Glade") all of Range's right in the Stern Property.

42. Paragraph "11.3" of the PSA requires Range to provide Kriebel notice of any assignment of the interests acquired from Kriebel, and specifically reads as follows:

> *Notwithstanding anything to the contrary, nothing in this agreement is intended to restrict any Party, from and after Closing, from assigning or transferring any of its interests in any Lease or Jointly Owned AMI Interest; provided, however, from and after the Closing, each Party shall use its commercially reasonable efforts to provide notice to the other Parties in the event such Party assigns all or part of its interest in any Lease; provided further, however, that no Party will have any liability to the other Parties if it fails to provide such notice.*

43. Despite the language in Paragraph "11.3" of the PSA, neither Range nor Glade provided notice to Kriebel of the assignment of Range's interest in the Stern Property to Glade.

44. Range and Glade have communicated that the royalty interest in dispute was not assigned to Glade, and Glade has no interest in the royalty being claimed by Range and Kriebel.

**RANGE'S PRIOR INTERPRETATION OF RANGE ASSIGNMENT'S NET REVENUE INTEREST**

45. This same issue has previously occurred and has been addressed by the parties concerning the following two unrelated properties:

a. Property located in Rayburn and Valley Townships, Armstrong County, being 213 acres and further identified as Armstrong County Tax Identification Number 39-129.00-01-04; 39-120.00-0-04.001; 39-120.00-01-04.002; 39-120.00-01-04.003; 39-120.00-01-05; 39-120.00-01-05.001; 39-120.00-01-05.002; and 46-108.00-06-51 (the "Brunt Property");

b. Property located in West Franklin Township, Armstrong County, being 88.50 acres and further identified as Armstrong County Tax Identification Number 49.080.00-01-05 (the "JGG Property").

46. Like the Stern Property, at the time of the 2008 assignment from Kriebel to Range, Kriebel owned a 100% fee interest in the Brunt Property and the JGG Property.

47. Also like the Stern Property, the Brunt Property and JGG Property were listed in the PSA and Range Assignment as having a Net Revenue Interest of 87.5%.

48. It is believed and therefore averred that in the fall of 2016 Range and Snyder Brothers, Inc. entered into a purchase agreement or exchange agreement, in which Range agreed to sell and assign certain oil and gas properties or leases to Snyder Brothers, Inc., including the Brunt Property and JGG Property.

49. It is believed and therefore averred that Range represented to Snyder Brothers, Inc. that Range owned a Net Revenue Interest of 87.5% in the Brunt Property and JGG Property.

50. In late 2016, prior to the closing of the sale from Range to Snyder Brothers, Inc., Range and Snyder Brothers, Inc. requested Kriebel enter into an oil and gas lease for the 12.5% interest Kriebel owned in the Brunt Property and JGG Property.

51. Kriebel agreed to enter into the requested leases with Range for Kriebel's ownership interest in the Brunt Property and JGG Property. *The lease entered into between Kriebel and Range for the Brunt Property, dated January 17, 2017 is attached hereto as Exhibit "T". The lease entered into between Kriebel and Range for the JGG Property, dated February 8, 2017 is attached hereto as Exhibit "U".*

52. Pursuant to an assignment dated March 7, 2017 and recorded at Armstrong County Instrument Number 201702454, the Kriebel leases on the Brunt Property and JGG Property were assigned to Snyder Brothers, Inc.

53. Snyder Brothers, Inc. has produced the Brunt Property and paid the royalty to Kriebel, pursuant to the terms of the new lease.

54. The JGG Property has not yet been produced by Snyder Brothers, Inc.

55. Range's interpretation and actions with regards to the Brunt Property and JGG Property, demonstrate that Range has historically interpreted the Net Revenue Interest on Exhibit "A" to the Range Assignment, as limiting the percentage interest that was assigned from Kriebel to Range.

**GLADE OPERATIONS AND PRODUCTION**

56. Since acquiring the Stern Property, Glade (or its related Snyder Brothers, Inc.) has included it in a unit identified as the Callas SE Unit, containing a total of 1,546.9916 acres, and has spud five wells within the Unit.

57. The table below sets forth the units, wells and reported production of each of the units and wells which include a portion of the Stern Property.

| **Permit Number** | **Well Name** | **Total Gas (mcf)** |
|---|---|---|
| 005-31482 | Callas 1H | 1,251,664 |
| 005-31490 | Callas 2H | 919,839 |
| 005-31483 | Callas 3H | 1,199,504 |
| 005-31484 | Callas 4H | 1,123,128 |
| 005-31450 | Callas 5H | 1,076,150 |

58. On or around September 4, 2025, Range executed a Division Order with Snyder Brothers, Inc., by which Range claimed ownership of Kriebel's landowner royalty.

59. Upon being notified that the landowner royalty is in dispute, Snyder Brothers, Inc. agreed to hold the landowner royalty in suspense until parties reach a resolution.

## COUNT 1 – DECLARATORY JUDGMENT

60. The preceding paragraphs are hereby incorporated by reference, the same as though set forth at length.

61. This Count is brought pursuant to the Declaratory Judgments Act, 42 Pa.C.S.A. § 7531, et. seq., for the purpose of determining the legal rights and obligations of the parties and involves a question of general and actual controversy that is ripe for consideration, as appears more fully hereafter.

62. Kriebel disputes Range's claim to ownership of the Stern Property.

63. Pursuant to the Range Contract, Kriebel Contracting Companies assigned only an 87.5% interest in the Stern Property to Range.

64. Range did not own, and thus could not have assigned more than an 87.5% Net Revenue Interest in the Stern Property to Glade.

65. Kriebel owns a 12.5% interest in the Stern Property, pursuant to the KRC Assignment.

WHEREFORE, Kriebel, respectfully requests this Honorable Court enter a Declaratory Judgment, in favor of Kriebel and against Defendant Range, ordering and declaring the following:

A. Plaintiffs, pursuant to the terms of the Kriebel Contract, assigned an 87.5% interest in the Stern Property to Range;

B. Kriebel is the present owner of a 12.5% interest in the Stern Property;

C. Glade is the present owner of an 87.5% interest in the Stern Property;

D. Kriebel is entitled to be paid 12.5% of all revenue generated and produced from the Stern Property;

E. Such other declarations or relief that the Court may deem appropriate and just.

**In the alternative –**

**COUNT 2 – CONSTRUCTIVE TRUST**

66. The preceding paragraphs are hereby incorporated by reference, the same as though set forth at length.

67. Pursuant to the Range Contract, Kriebel Contracting Companies assigned to Range an 87.5% interest in the Stern Property.

68. As set forth above, the Kriebel Contracting Companies and Range specifically negotiated a rate of pay for properties wherein Range desired to acquire a Net Revenue Interest above 87.5%, with the payment rate being $135.48 per acre, for each percentage of royalty conveyed above the 87.5% Net Revenue Interest.

69. As set forth on the Closing Settlement Statement, the Kriebel Contracting Companies were paid $140,257.95 for an 87.5% interest in the Stern Property.

70. Range had the intent to purchase an 87.5% interest in the Stern Property, and Range knew and agreed that the intent of the Range Assignment was to assign only an 87.5% interest in the Stern Property.

71. If the Court determines the Range Assignment assigned a 100% interest in the Stern Property, the assignment was by <u>mutual mistake</u>, and did not fulfill the intent of the parties to the Range Assignment.

72. The specific mutual mistake, if any the Court determines that the Range Contract assigned a 100% interest, was that the parties failed to include specific references or restrictions in the Range Contract that would be legally sufficient to limit the Net Revenue Interest assigned to Range to 87.5%.

73. "*A constructive trust arises if a transferee conveys property to another as a result of fraud, duress, undue influence or mistake*". *Kohr v. Kohr*, 271 Pa. Super. 321, 328 (1979).

74. If the Court determines the Range Assignment assigned a 100% interest in the Stern Property, a constructive trust was created as a matter of law, with Range initially holding Kriebel's 12.5% interest as trustee.

75. The constructive trust continues, with Range having an obligation to act on behalf of Kriebel with regards to Kriebel's 12.5% interest in the Stern Property.

76. As trustee of the constructive trust in favor of Kriebel, Range is obligated to account to Kriebel for all proceeds produced from Kriebel's 12.5% interest in the Stern Property.

77. Without the creation of a constructive trust in favor of Kriebel, Range will be unjustly enriched as a result of mistakenly receiving a 100% interest in the Stern Property.

WHEREFORE, Kriebel, respectfully requests this Honorable Court:

A. Enter an order declaring a constructive trust exists with regards to Kriebel's 12.5% interest in the Stern Property;

B. Enter an order for Range to fully account for and pay 12.5 percent of all revenues received from oil or gas produced from the Stern Property to Kriebel;

C. Enter an order for costs, expenses and attorneys' fees in favor of Kriebel, in an amount the Court deems appropriate and just;

D. Such other relief as the Court may deem appropriate and just.

**<u>COUNT 3 – BREACH OF CONTRACT</u>**
(Kriebel v. Range)

78. The preceding paragraphs are hereby incorporated by reference, the same as though set forth at length.

79. The Kriebel Contracting Companies and Range entered into the PSA and Range Contracts.

80. Pursuant to paragraph "7" of the Range Assignment, all of the documents making up the Range Contract, as set forth above, constitute the binding contract of the parties.

81. Under the Range Contract, Range was assigned 87.5% of the Stern Property, and had an outstanding obligation to pay Kriebel, the owner of the remaining 12.5% of the oil and gas, its proportionate share of the proceeds collected from the sale of oil or gas recovered from the Stern Property.

82. Under paragraph 1.3 of the PSA, "Assumed Liabilities", and Range specifically agreed to assume any and all liabilities relating to the Purchased Assets that arise on or after the Closing.

83. The obligation to pay Kriebel, a co-owner of the Stern Property and Royalty Owner if the Stern Property, its 12.5% arose upon Glade producing and selling oil or gas from the Stern Property.

84. As a result of Range making a claim to the 12.5% ownership interest held by Kriebel, Glade has failed in its obligation to pay Kriebel the 12.5%, as a common owner.

85. Glade's failure to pay the 12.5%, as an obligation occurring after Closing, is a violation of the PSA.

86. Kriebel Contracting Companies and Range have privity of contract, having entered into the PSA and Range Contract.

87. Despite having assigned or subleased the Stern Property to Glade, Range remains liable to Kriebel under the terms of the Range Contract.

88. Range remains liable for the failure of Kriebel to be paid its landowner royalty on the Stern Property

89. Moreover, if Range conveyed more than an 87.5% interest in the Stern Property to Glade, then Range conveying to Glade, an interest in the Stern Property, over and above the 87.5% assigned to Range by Kriebel, constitutes a breach of contract as the parties only contracted to assign Range an 87.5% interest in the Stern Property.

WHEREFORE, Kriebel, respectfully requests this Honorable Court:

A. Enter an order for money damages, plus interest, in favor of Kriebel, in an amount in excess of $100,000.00;

B. Enter an order for costs, expenses and attorneys' fees in favor of Kriebel, in an amount the Court deems appropriate and just;

C. Such other relief as the Court may deem appropriate and just.

**In the alternative -**

**COUNT 4 – UNJUST ENRICHMENT**

90. The preceding paragraphs are hereby incorporated by reference, the same as though set forth at length.

91. Pursuant to the Range Contract, Kriebel Contracting Companies assigned to Range an 87.5% interest Net Revenue Interest in the Stern Property.

92. As set forth above, Plaintiffs and Range specifically negotiated a rate of pay for properties wherein Range desired to acquire a Net Revenue Interest above 87.5%, with the payment rate being $135.48 per acre, for each percentage of royalty conveyed above the 87.5% Net Revenue Interest.

93. As set forth on the Closing Settlement Statement, Kriebel Contracting Companies were paid $140,257.95 for an 87.5% interest in the Stern Property.

94. If the Court determines that the Range Assignment assigned and conveyed a 100% interest in the Stern Property, and Range having paid Kriebel Contracting Companies for only an 87.5% interest in the Stern Property, if Range is permitted to retain the 100% interest in the Stern Property, then Range would be unjustly enriched at the expense of Plaintiffs.

WHEREFORE, Kriebel, respectfully requests this Honorable Court:

A. Enter an order for money damages, plus interest, in favor of Kriebel and against Range, in an amount in excess of $100,000.00;

B. Enter an order for Glade and Range to pay 12.5 percent of all revenues from oil or gas produced from the Stern Property to Kriebel;

C. Enter an order for costs, expenses and attorneys' fees in favor of Kriebel, in an amount the Court deems appropriate and just;

D. Such other relief as the Court may deem appropriate and just.

**In the alternative –**

**COUNT 5 – REFORMATION OF RANGE ASSIGNMENT**

121. The preceding paragraphs are hereby incorporated by reference, the same as though set forth at length.

122. Kriebel unequivocally avers that the Range Contract and Range Assignment unambiguously assigned only an 87.5% Net Revenue Interest in the Stern Property, leaving Kriebel with the landowner royalty of 12.5%.

123. It is Kriebel's understanding that Range will argue that the Range Assignment assigned a 100% interest in the Stern Property, based upon the following language of the Range Assignment:

> *grant, convey, sell, transfer, assign and set over unto Range all of [Kriebel's] right, title and interest in, to and under (a) oil, gas and other minerals in, to and under the lands identified in Exhibit A hereto or in the instruments identified in Exhibit A hereto (the "Mineral Interests") ... (b) all rights attributable to such Mineral Interests to the extend relating to ... the Deep Rights... and (c) any other rights properties or interests relating to, or necessary in connection with, the ownership and operation of the Deep Rights (collectively, the "Purchased Assets").*

124. It is believed and therefore averred that Range will further argue that the "*Net Revenue Interest*" and the "*Working Interest*" percentages within Exhibit "A" to the Range Assignment, and the definition of "*Lease Burden*"[1] within the PSA and the fact that the Range Assignment incorporates all of the documents delivered pursuant to the PSA as part of the Range Assignment[2], as having no legal meaning or weight in the interpretation of the Range Assignment.

125. It is believed and therefore averred that Range makes its assertions on the intent of the Range Assignment and Range Contract, despite none of the individual employees that worked on the 2008 Kriebel to Range transaction being currently employed at Range and despite Range having failed to contact or communicate with any of the individuals that were involved in the 2008 Kriebel to Range transaction concerning the intent of the parties.

126. In the event that the Court agrees with Range's assertion, which Kriebel will strongly contest, then the Range Assignment assigned a 100% interest in the Stern Property by <u>mutual mistake</u>.

---

[1] The PSA defines "Lease Burden" as follows, "*with respect to each Lease, the royalties, overriding royalties, production payments, net profit interests, and all similar interests burdening such Lease or production* therefrom"

[2] One of the documents incorporated as part of the Range Assignment was the **<u>Closing Settlement Statement</u>**, on which it is clearly stated that Range paid for an 87.5% Net Revenue Interest, and there was no upward adjustment for a percentage higher than 87.5%, as was the agreement of the parties and as there was on other properties when an interest was conveyed above 87.5%.

127. At all times during the negotiation and execution of the PSA and Range Assignment, both Kriebel and Range communicated and agreed that the percentage interests being assigned would be specifically set forth on the exhibits to the PSA and Range Assignment.

128. If the very limited language referenced in paragraph "*123*" herein is interpreted by the Court to assign all of Kriebel's interest in the Stern Property to Range, despite the Range Contract as a whole unambiguously limiting the Net Revenue Interest assigned to 87.5%, and Range only having paid for 87.5%, then the referenced language failed to correctly memorialize the true and accurate agreement of the parties.

129. The mutual mistake in the written Range Assignment occurred in the drafting and memorialization of the parties' agreement. At no time did the parties intend to change the original agreement to assign more than 87.5% in the Stern Property.

130. The specific mutual mistake, if any the Court determines that the Range Contract assigned a 100% interest, was that the parties failed to include specific references or restrictions in the Range Contract that would be legally sufficient to limit the Net Revenue Interest assigned to Range to 87.5%.

131. Under Pennsylvania law, written instruments may be reformed when, due to mutual mistake, or a unilateral mistake induced by the other party's fraud or inequitable conduct, the instrument does not express the parties' actual agreement. *See*, e.g., *Bugen v. New York Life Ins. Co.*, 184 A.2d 499 (Pa. 1962); *Hollis v. Hollis*, 201 A.3d 1198 (Pa. Super. Ct. 2019).

132. Reformation is appropriate where the parties came to an identical agreement but the written document fails to express that agreement. Pennsylvania courts

grant such relief to correct scrivener's errors, incorrect numerical expressions, or similar drafting mistakes.

133. If the Court finds that the Range Assignment conveyed all of Plaintiffs' interest in the Stern Property, and the Range Assignment is not reformed, Kriebel will suffer immediate and irreparable harm, including the unintended loss of an additional 12.5% interest in the Stern Property, which Kriebel never intended to assign and Range never intended to purchase or acquire.

134. Equity therefore requires that the Range Assignment be reformed to reflect the parties' actual intent.

WHEREFORE, Kriebel, respectfully requests this Honorable Court:

A. Enter an order reforming the Range Assignment to accurately reflect that Kriebel assigned to Range an undivided 87.5% Net Revenue Interest in the Stern Property, and thereby maintained ownership of the 12.5% landowner royalty;

B. Order Defendant Range to execute any documents necessary to effectuate the reformed Range Assignment;

C. Such other relief as the Court may deem appropriate and just.

Dated: 7/2/2026

Respectfully submitted:

AL LANDER, ESQ.
Pa. Id. #25821
ZACH SHEKELL, ESQ.
Pa. Id. #308785
Law Offices of Greco, Lander & Shekell, P.C.
1390 East Main Street, Suite 2
P.O. Box 667
Clarion, PA 16214
(814) 226-6853
Fax: (814) 226-4951

# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRIEBEL PRODUCTION CO.; KRIEBEL RESOURCES COMPANY; JGG PARTNERS, LP; K & K MINERAL RESOURCES CO.; KRIEBEL GAS & OIL, INC.; KRIEBEL PRODUCTION CO., LLC; KRIEBEL MINERALS; KRIEBEL RESOURCES CO., LLC and KRIEBEL RESOURCES, | : | Case No.: 2:26-cv-01258 |
| Plaintiffs, | : | **Electronically Filed** |
| vs. | : | |
| RANGE RESOURCES – APPALACHIA, LLC, | : | |
| Defendant. | : | |

## VERIFICATION

I, James E. Kriebel, verify that the statements made herein are true and correct to the best of my knowledge, information, and belief and are made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Date: July 2, 2026

James E. Kriebel

# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRIEBEL PRODUCTION CO.; KRIEBEL RESOURCES COMPANY; JGG PARTNERS, LP; K & K MINERAL RESOURCES CO.; KRIEBEL GAS & OIL, INC.; KRIEBEL PRODUCTION CO., LLC; KRIEBEL MINERALS; KRIEBEL RESOURCES CO., LLC and KRIEBEL RESOURCES, | : | Case No.: 2:26-cv-01258 |
| Plaintiffs, | : | **Electronically Filed** |
| vs. | : | |
| RANGE RESOURCES – APPALACHIA, LLC, | : | |
| Defendant. | : | |

**CERTIFICATION OF COMPLIANCE**

I, Al Lander, Attorney representing Plaintiffs, Kriebel Production Co., Kriebel Resources Company, JGG Partners, LP, K & K Mineral Resources Co., Kriebel Gas & Oil, Inc., Kriebel Production Co., LLC, Kriebel Minerals, Kriebel Resources Co., LLC; and Kriebel Resources, certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Date: 7/2/2026

By: [signature]
AL LANDER, ESQ.

{GL186159.1}

# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRIEBEL PRODUCTION CO.; KRIEBEL RESOURCES COMPANY; JGG PARTNERS, LP; K & K MINERAL RESOURCES CO.; KRIEBEL GAS & OIL, INC.; KRIEBEL PRODUCTION CO., LLC; KRIEBEL MINERALS; KRIEBEL RESOURCES CO., LLC and KRIEBEL RESOURCES, | : | Case No.: 2:26-cv-01258 |
| Plaintiffs, | : | **Electronically Filed** |
| vs. | : | |
| RANGE RESOURCES – APPALACHIA, LLC, | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I, Al Lander, Esq., hereby certify that a true and correct copy of the foregoing "**Amended Complaint**" was served upon the following by e-mail and first-class mail, postage prepaid on this 2nd day of July, 2026:

Kenneth J. Witzel, Esq.
Michael J. Ozdinec
Ozdinec & Witzxel, LLC
One Landmark North
20399 Route 19, Suite 206
Cranberry Township, PA 16066
kwitzel@ozwitz.com
Mozdinec@ozwitz.com

Counsel for Plaintiffs,

Al Lander, Esq